# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

MARK BLANKENBURG,

               Petitioner,            :     Case No. 1:16-cv-505

     - vs -                            District Judge Michael R. Barrett
                                       Magistrate Judge Michael R. Merz

MICHELE MILLER, Warden,
  Belmont Correctional Institution,
                                   :
              Respondent.

# INTERIM REPORT AND RECOMMENDATIONS

This habeas corpus case under 28 U.S.C. § 2254 is before the Court for decision on the merits.

Upon review of the Petition (ECF No. 1), Magistrate Judge Litkovitz, to whom this case was initially referred, ordered the Warden to answer (ECF No. 2). In due course the Warden filed the state court record ("SCR," ECF No. 8) and a Return of Writ (ECF No. 16). Judge Litkovitz thereafter granted motions to expand the record and to file under seal (ECF Nos. 17, 18, 19). The reference was transferred to the undersigned to help balance the Magistrate Judge workload in the Western Division (ECF No. 20).

Mr. Blankenburg pleads the following grounds for relief:

> **14:** The State violated Due Process when it failed to provide sufficient notice of the sex-offenses in the indictment, bill of particulars, and at the trial. Specifically, the State charged multiple, single-act offenses within single counts—indicating that each count contained an undetermined and unspecifiable number of

criminal acts and offenses within each count. Even more specifically, this insufficient-notice claim is directed to Counts 15-18 and Counts 37-41 from the indictment and judgment entry of conviction.

**15:** The State violated Double Jeopardy by convicting Blankenburg of multiple, single-act offenses within single counts. Specifically, the State failed to describe the acts and offenses that formed the basis for Blankenburg's convictions in the indictment, bill of particulars, and at trial regarding Counts 15-18 and 37-41. In this way, Blankenburg remains exposed to future prosecutions for acts and offenses he was already convicted of.

**16:** Blankenburg's trial was unconstitutionally tainted by the three variants of 6th Amendment juror impartiality: i) actual juror bias, ii) implied juror bias, and iii) deliberate juror concealment during voir dire. Specifically, Blankenburg elicited affidavit evidence that a juror in his case was biased against him. The juror was a pharmacist and filled prescriptions for Blankenburg, which the juror failed to disclose, and some offenses involved Blankenburg's abuse of prescription drug laws. The juror had a minor child that treated with Blankenburg, who was a pediatrician, which the juror likewise failed to disclose and where some offenses involved sex abuse of minor patients. Finally, the juror told the affiants she harbored an actual bias against Blankenburg and intended to convict him, which she also failed to disclose.

(Petition, ECF No. 1, PageID 2-3.)

## Procedural History

Mr. Blankenburg was indicted by the Butler County grand jury on March 6, 2009, on fifty-four counts: four counts of corruption of a minor, eight counts of corruption another with drugs, nine counts of pandering sexually-oriented matter involving a minor, two counts of aggravated trafficking in drugs, six counts of trafficking in drugs, three counts of bribery, six counts of money laundering, six counts of gross sexual imposition, six counts of illegal use of a minor in a nudity-oriented material of performance, two counts of engaging in a pattern of corrupt activity, one count

of compelling prostitution, one count of complicity to compelling prostitution, and one count of complicity to bribery. Blankenburg waived his right to trial by jury as to some counts, but all counts were tried at the same time. The jury found him guilty of four counts of corruption of a minor, six counts of gross sexual imposition, three counts of compelling or complicity of prostitution, and three counts of pandering sexually oriented matter involving a minor. The trial court found him guilty of four counts of drug trafficking, one count of money laundering and one count of aggravated drug trafficking. He was then sentenced to an aggregated sentence of twenty-one to twenty-seven years. On twelve counts that had been severed, he pleaded guilty to two and the rest were merged. The court sentenced him to twelve months on each count, to be served concurrently with the sentences already imposed.

Blankenburg appealed and his convictions were affirmed. *State v. Blankenburg*, 197 Ohio App. 3d 201 (12th Dist. 2012)("*Blankenburg I*"), appellate jurisdiction declined, 132 Ohio St. 3d 1514 (2012). While the appeal was pending, Blankenburg filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. The trial court denied relief, but the Twelfth District reversed and remanded. *State v. Blankenburg*, 2012-Ohio-6175, 2012 Ohio App. LEXIS 5321 (12th Dist. Dec 28, 2012)("*Blankenburg II*"). On appeal after remand, the Twelfth District affirmed denial of the petition. *State v. Blankenburg*, 2014-Ohio-4621, 2014 Ohio App. LEXIS 4519 (Oct 20, 2014)("*Blankenburg III*"), appellate jurisdiction declined, 142 Ohio St. 3d 1465 (2015). Blankenburg, with the assistance of counsel, then filed his Petition in this Court April 29, 2016.

# Analysis

**Ground One:  Insufficient Notice and Double Jeopardy[1]**


In his First Ground for Relief, Blankenburg contends that the indictment, the bill of particulars, and the manner of eliciting evidence at trial deprived him of fair notice of the charges against which he was required to defend and violated his right to be free of double jeopardy.

The nine counts of the indictment at issue in Ground One are Counts 15, 16, 17, 18, 37, 38, 39, 40, and 41 which read as follows:

## COUNT FIFTEEN (15)
## GROSS SEXUAL IMPOSITION

> On or about May 1, 1990, through April 30, 1993, at Butler County, Ohio, as an ongoing and continuing course of criminal conduct, Mark E. Blankenburg M.D. did have sexual contact with another, not the spouse of the offender, cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person, which constitutes the offense of GROSS SEXUAL IMPOSITION, a Third Degree Felony, in violation of R.C. §2907.05(A)(4), and against the peace and dignity of the State Of Ohio
> .

## COUNT SIXTEEN (16)
## CORRUPTION OF A MINOR

> On or about May 1, 1994, through April 30, 1996, at Butler County, Ohio, as an ongoing and continuing course of criminal conduct, Mark E. Blankenburg M.D., being a person who is eighteen years of age or older, did engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard, and the offender is four or more years older than the other person,

---

[1] Although Blankenburg separates these two claims into Paragraphs 14 and 15 in the Petition, he combines them for argument in his Traverse.

which constitutes the offense of CORRUPTION OF A MINOR, a Third Degree Felony, in violation of RC. §2907.04(A), and against the peace and dignity of the State Of Ohio.

## COUNT SEVENTEEN (17)
## COMPELLING PROSTITUTION

On or about May 1, 1994, through June 30, 1996, at Butler County, Ohio, as an ongoing and continuing course of criminal conduct, Mark E. Blankenburg M.D. did knowingly induce, procure, solicit, or request a minor to engage in sexual activity for hire, whether or not the offender knows the age of the minor, which constitutes the offense of COMPELLING PROSTITUTION, a Third Degree Felony, in violation of R.C. §2907.21 (A)(2) , and against the peace and dignity of the State Of Ohio.

## COUNT EIGHTEEN (18)
## COMPELLING PROSTITUTION

On or about July 1, 1996, through April 30, 1998, at Butler County, Ohio, as an ongoing and continuing course of criminal conduct, Mark E. Blankenburg M.D. did knowingly induce, procure, encourage, solicit, request, or otherwise facilitate a minor to engage in sexual activity for hire, whether or not the offender knows the age of the minor, which constitutes the offense of COMPELLING PROSTITUTION, a Third Degree Felony, in violation of R.C. §2907.21 (A)(2), and against the peace and dignity of the State Of Ohio.

## COUNT THIRTY SEVEN (37)
## GROSS SEXUAL IMPOSITION

On or about April 18, 1993, through April 17, 1994, at Butler County, Ohio, as an ongoing and continuing course of criminal conduct, Mark E. Blankenburg M.D. did have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person, which constitutes the offense of GROSS SEXUAL IMPOSITION, a Third Degree Felony, in violation of R.C. §2907.05(A)(4), and against the peace and dignity of the State Of Ohio.

## COUNT THIRTY EIGHT (38)
## GROSS SEXUAL IMPOSITION

On or about April 18, 1994, through April 17, 1995, at Butler County, Ohio, as an ongoing and continuing course of criminal conduct, Mark E. Blankenburg M.D. did have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person, which constitutes the offense of GROSS SEXUAL IMPOSITION, a Third Degree Felony, in violation of R.C. §2907.05(A)(4), and against the peace and dignity of the State Of Ohio.

## COUNT THIRTY NINE (39)
## GROSS SEXUAL IMPOSITION

On or about April 18, 1995, through June 30, 1996, at Butler County, Ohio, as an ongoing and continuing course of criminal conduct, Mark E. Blankenburg M.D. did have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person, which constitutes the offense of GROSS SEXUAL IMPOSITION, a Third Degree Felony, in violation of R.C. §2907.05(A)(4), and against the peace and dignity of the State Of Ohio.

## COUNT FORTY (40)
## GROSS SEXUAL IMPOSITION

On or about July 1, 1996, through April 17, 1997, at Butler County, Ohio, as an ongoing and continuing course of criminal conduct, Mark E. Blankenburg M.D. did have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person, which constitutes the offense of GROSS SEXUAL IMPOSITION, a Third Degree Felony, in violation of RC. §2907.05(A)(4), and against the peace and dignity of the State Of Ohio.

**COUNT FORTY ONE (41)**
**GROSS SEXUAL IMPOSITION**

> On or about April 18, 1997, through April 17, 1998, at Butler County, Ohio, as an ongoing and continuing course of criminal conduct, Mark E. Blankenburg M.D. did have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person, which constitutes the offense of GROSS SEXUAL IMPOSITION, a Third Degree Felony, in violation of R.C. §2907.05(A)(4), and against the peace and dignity of the State Of Ohio.

(Indictment, SCR 8.) Blankenburg avers that two victims were involved in these counts of the indictment, M.K. for counts 15-18 and B.L.B. for counts 37-41.

Blankenburg raised his First Ground for Relief as his first assignment of error on direct appeal and the Twelfth District decided it as follows:

> **[\*\*P5]** Assignment of Error No. 1:

> **[\*\*P6]** BLANKENBURG'S CONSTITUTIONAL RIGHTS WERE VIOLATED BY A DUPLICITOUS INDICTMENT AND BY DUPLICITOUS CHARGING.

> **[\*\*P7]** Under this assignment of error, Blankenburg argues that "[m]ultiple acts of sexual misconduct were conflated into single counts" and at trial, the state "introduced evidence of multiple acts of sexual misconduct to prove single counts. This constitutes duplicity, and violates Crim. R 8(A), the Sixth Amendment right to notice of the charge, the Fifth Amendment right to avoid double jeopardy, the Article I, §5 right to a unanimous jury in a criminal case, and the Article I, §10 right to have a grand jury determine a criminal charge."

> **[\*\*P8]** According to Black's Law Dictionary, in criminal procedure, "duplicity" takes the form of joining two or more offenses in the same count of an indictment; also termed double pleading." *Id.* (8 Ed. 2004) 541. "Duplicitous," as applicable here, is defined as "alleging two or more matters in one plea." *Id.; see United States v. Murray, 618 F.2d 892, 896 (2nd Cir.1980)*

(indictment is duplicitous if it joins two or more distinct crimes in a single count).

[**P9**] Blankenburg asked the trial court to address his duplicity arguments on numerous counts of the indictment prior to trial. More than one hearing was devoted at least partially to a discussion of duplicity, specifically as it pertained to certain drug counts. The trial court denied Blankenburg's motion to dismiss the counts or to split individual counts into separate counts.

[**P10**] Under this assignment of error, Blankenburg relies on the bill of particulars to identify the alleged victim of a specific count of the indictment he is challenging. Blankenburg asserts that the following counts involved duplicitous charging or a duplicitous indictment or both: Counts 37 through 41 (gross sexual imposition against victim B.B.); Count 15 (gross sexual imposition against victim M.K.); Count 16 (corruption of a minor, victim M.K.); Counts 17 and 18 (compelling prostitution, victim M.K.)

[**P11**] For B.B., Count 37 alleges that Blankenburg committed the offense of gross sexual imposition as an on-going and continuing course of conduct during a one-year period from April 18, 1993, through April 17, 1994, when B.B. was eight years old, and each successive count (Counts 38 through 41) involves a one-year period for the following year, which reportedly corresponds to the year in which this particular victim, B.B., would have been 9, 10, between 10 and 11, and 12 years old, respectively.

[**P12**] Blankenburg argues Counts 37 through 41 allege multiple acts for each GSI count, and it constituted duplicitous charging when B.B. said Blankenburg fondled B.B.'s genitals 30 to 40 times at Blankenburg's medical office beginning at age eight or nine.

[**P13**] As to M.K., Count 15 of the indictment and bill of particulars alleged that Blankenburg committed gross sexual imposition by fondling M.K.'s genitals as an ongoing course of conduct from May 1, 1990, through April 30, 1993; committed the offense of corruption of a minor as an ongoing course of conduct for performing fellatio on M.K. when the victim was 14 to 15 years old for Count 16; and committed the offense of compelling prostitution as an ongoing course of conduct when he paid money to M.K. to induce or procure sexual activity (fellatio) with M.K. for hire from May 1, 1994, through June 30, 1996, for Count 17 and from July 1, 1996, through April 30, 1998, for Count 18.

[**P14**] An indictment is sufficient if it: (1) contains the elements

of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy. *See Hamling v. United States*, 418 U.S. 87, 117-118, 94 S.Ct. 2887, 41 L. Ed. 2d 590 (1974).

[**P15]** R.C. 2941.03(E) provides, in part, that an indictment is sufficient if it can be understood from the indictment "that the offense was committed at some time prior to the time of finding of the indictment." Each count of the indictment must contain, in substance, "a statement that the accused has committed some public offense therein specified." R.C. 2941.05.

[**P16]** The applicable version of R.C. 2941.04 states, in part, that an indictment may charge two or more different offenses connected together in their commission, or different statements of the same offense, or two or more different offenses of the same class of crimes, under separate counts, and if two or more indictments are filed in such cases the court may order them to be consolidated.

[**P17]** An indictment is valid even if it states the time imperfectly or omits the time where the time is not an essential element of the offense. R.C. 2941.08(B) and (C). Other defects in the indictment do not render it invalid where they "do not tend to prejudice the substantial rights of the defendant upon the merits." R.C. 2941.08(K).

[**P18]** Crim.R. 8(A) provides that two or more offenses may be charged in the same indictment or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

[**P19]** According to R.C. 2941.28,

> No indictment or information shall be quashed, set aside, or dismissed for any of the following defects:
>
> (A) That there is a misjoinder of the parties accused;
>
> (B) That there is a misjoinder of the offenses charged in the indictment or information, or duplicity therein;

(C) That any uncertainty exists therein.

If the court is of the opinion that either defect referred to in division (A) or (B) of this section exists in any indictment or information, it may sever such indictment or information into separate indictments or informations or into separate counts.

If the court is of the opinion that the defect referred to in division (C) of this section exists in the indictment or information, it may order the indictment or information amended to cure such defect, provided no change is made in the name or identity of the crime charged.

[**P20] We have thoroughly reviewed the record with reference to Blankenburg's specific arguments and found none of them well taken. First, we note this case involves a continuing course of conduct charged as separate offenses differentiated by certain time frames. As noted below, Ohio courts have permitted course of conduct prosecutions in cases involving multiple acts of sexual abuse perpetrated against child victims. The counts at issue here involve allegations of conduct toward victims who were children or teenagers when the alleged acts occurred several years ago.

[**P21] Where crimes alleged in the indictment constitute sexual offenses against children, they need not state with specificity the dates of the alleged abuse, so long as the state establishes that the offense was committed within the time frame alleged. *See State v. Wagers*, 12th Dist. No. CA2009-06-018, 2010 Ohio 2311, ¶17-18.

[**P22] We do not share the concerns expressed about jury unanimity. Where an indictment alleges that a child victim was molested intermittently within a specified time period even though the exact date of each molestation is unknown, the jury must either believe or disbelieve the victim's testimony that the pattern of conduct occurred. *See State v. Ambrosia*, 67 Ohio App.3d 552, 587 N.E.2d 892 (6th Dist.1990).

[**P23] While some of the separate acts might have been separately charged, the possibility of but one conviction rather than many was to the accused's advantage. *See State v. Nebe*, 26 Ohio Law Abs. 581, 1937 WL 2412 (8th Dist.1937).

[**P24] In *State v. Chaney*, 3rd Dist. No.13-07-30, 2008 Ohio

3507, the Third Appellate District upheld a conviction for two rape counts and one GSI count, where it was alleged that the accused engaged in a course of conduct beginning in September 1995 through September 2002, and the victim testified that she was touched inappropriately when she was a minor every day except weekends when her mother wasn't home, and after they moved, the accused engaged in cunnilingus several times.

[**P25] This court affirmed a conviction in which the accused was charged with four counts of felonious assault and those four counts were based upon numerous acts and omissions perpetrated against her children over the course of years. *State v. Cooper*, 139 Ohio App.3d 149, 743 N.E.2d 427 (12th Dist.2000).

[**P26] The Fifth Appellate District in *State v. Michael*, 5th Dist. No. 10APO90034, 2011 Ohio 2691, affirmed a conviction in which two counts of rape were charged as a continuing course of conduct and encompassed a particular time period, spanning from when the victim was ten years old until the abuse was disclosed and the accused was arrested.

[**P27] The Eighth Appellate District upheld a conviction where the accused was charged with three counts of rape and three counts of GSI for abusing two girls separately and repeatedly over a four-year period; one victim testified she was raped approximately two out of every five school days and at every place the family resided. *State v. Bruce*, 8th Dist. No. 92016, 2009 Ohio 6214, appeal not allowed, 125 Ohio St. 3d 1441, 2010 Ohio 2212, 927 N.E.2d 12, appeal not allowed, 129 Ohio St. 3d 1478, 2011 Ohio 4751, 953 N.E.2d 843.

[**P28] We agree with the reasoning of the Third Appellate District in *State v. Heft*, 3rd Dist. No. 8-09-08, 2009 Ohio 5908, appeal not allowed, 124 Ohio St. 3d 1508, 2010 Ohio 799, 922 N.E.2d 970, which found no double jeopardy issues when the defendant's indictment - as is the case here - differentiated the counts by the type of offense alleged and the time period, and as such, the accused was protected against a subsequent prosecution for the same conduct.

[**P29] In the case at bar, Blankenburg was charged with one offense per count of gross sexual imposition of B.B. as an ongoing course of conduct during a specific and separate time frame for the five counts. He was charged with one offense of gross sexual imposition as an ongoing course of conduct during a specific time frame for fondling M.K.'s genitalia, one offense of corruption of a

minor for performing fellatio on M.K. as an ongoing course of conduct during a specific time frame, and one offense each of compelling prostitution as an ongoing course of conduct for a specific and separate time frame for two separate counts of procuring sexual activity with M.K for hire.

[**P30] This case involved the difficulties presented when adults must recall acts of sexual abuse that occurred when they were minors. In many cases involving child sexual abuse, child victims are simply unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. *State v. Barnes*, 12th Dist. No. CA2010-06-009, 2011 Ohio 5226. However, the victims in the case at bar offered testimony of conduct as indicated by the grand jury indictment and within the time frames as reflected by the indictment.

[**P31] We are persuaded by the cases cited above that the manner in which these specific counts were charged, and the evidence that was offered, did not constitute error. Therefore, we decline to follow as too dissimilar *State v. Jackson*, 8th Dist. No. 95920, 2011 Ohio 5920.

[**P32] In *Jackson*, the defendant's convictions for child endangering and domestic violence were vacated when four distinct acts of physical abuse - punching a child, beating the child with a belt, burning him with a fork, and pushing the child out of the car -formed the basis of an indictment for felonious assault, domestic violence, and two counts of child endangering. *Id.* The *Jackson* court found the indictment did not apprise the defendant of what occurrences formed the basis of the charges and the jury reportedly had no idea which charge referred to which act. *Id.* Conversely, Blankenburg's indictment and the evidence admitted on the challenged counts presented no such impediment as each particular count involved instances of identical conduct.

[**P33] After reviewing the indictment and the record at trial, we are not convinced the manner in which Blankenburg was indicted or the evidence that was presented at trial prejudiced Blankenburg, and further, do not find the indictment or evidence failed to give him notice of the nature of the charges against him, resulted in an inadequate trial record to protect against subsequent prosecution for the same offense, violated Crim.R. 8, presented the risk that the jury may have convicted him by a nonunanimous verdict, or violated a right to have the grand jury determine the charge.

[**P34**] Blankenburg's first assignment of error is overruled.

*Blankenburg I, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

Where there has been one reasoned state court judgment rejecting a federal claim, there is a rebuttable presumption that later unexplained orders upholding the judgment or rejecting the same claim rest on the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). The district court must look at the last state court disposition providing reasons for the decision. *Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A state court's noncommittal denial of review is not controlling. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The last reasoned opinion on the relevant issues is *Blankenburg I*.

In this case Petitioner asserts "[a] close reading of the court's decision, however, reveals that it failed to adjudicate Blankenburg's specific due process and double jeopardy claims." He adds:

> None of the cases addressed Blankenburg's due-process claim that litigating 'an unspecified number of incidents' per count deprived him of any notice of those incidents and precluded a meaningful defense. [Doc. 8, PAGEID313-318.]
>
> And none of the cases addressed Blankenburg's double-jeopardy claim that it would be impossible to plead double jeopardy in a future proceeding to bar a prosecution and punishment for the

same offense when the instant case involved convictions for 'unspecified incidents'. [Id.]

(Traverse, ECF No. 16, PageID 3229.)

The Warden has not had an opportunity to respond to this argument because the argument is made in the Traverse and habeas corpus pleading does not anticipate such a response.

The Court finds Petitioner's argument is not well taken. The argument depends on the Twelfth District's citation of cases which, Petitioner says, do not address his fair notice and double jeopardy claims. The question, however, about whether a state court had decided a matter on the merits does not depend on whether the cases it cites are in point on the issues raised by an appellant.

A state court decision can constitute an "adjudication on the merits" entitled to deference under 28 U. S.C. § 2254(d)(1) even if the state court does not explicitly refer to the federal claim or to relevant federal case law. In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court held:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *See Chadwick v. Janecka*, 312 F.3d 597, 605-606 (CA3 2002); *Wright v. Secretary for Dept. of Corrections*, 278 F.3d 1245, 1253-1254 (CA11 2002); *Sellan v. Kuhlman*, 261 F.3d 303, 311-312 (CA2 2001); *Bell v. Jarvis*, 236 F.3d 149, 158-162 (CA4 2000) (en banc); *Harris v. Stovall*, 212 F.3d 940, 943, n. 1 (CA6 2000); *Aycox v. Lytle,* 196 F.3d 1174, 1177-1178 (CA10 1999); *James v. Bowersox*, 187 F.3d 866, 869 (CA8 1999). And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d). *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263

(2002) (per curiam). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

*Id.* at 784. "This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decisions can be deemed to have been 'adjudicated on the merits.'" *Id.* at 785. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Brown v. Bobby*, 656 F.3d 325, 329 (6th Cir. 2011), *quoting Harrington,*131 S. Ct. at 784-85. When the state court is silent as to its reasoning in denying a claim, "a habeas court must determine what arguments or theories supported or . . . could have supported the state court's decision." *Walker v. McQuiggan*, 656 F.3d 311, 318 (6th Cir. 2011), vacated on other *grounds Howes v. Walker*, 132 S. Ct. 2741, 183 L. Ed. 2d 32 (2012), *quoting Harrington*, 131 S. Ct. at 786. When the state court gives no explanation of its decision, "a habeas petitioner may meet his or her burden 'by showing there was no reasonable basis for the state court to deny relief.'" *Carter v. Mitchell*, 693 F.3d 555, 562 (6th Cir. 2012), *quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 784 (2011); *Moore v. Mitchell*, 708 F.3d 760, 776-77 (6th Cir. 2013). When a state court rules against a defendant in an opinion that rejects some of the defendant's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289 (2013).

In his Brief on appeal, Blankenburg's First Assignment of Error asserted that his "constitutional rights were violated by a duplicitous indictment and by duplicitous charging."

(SCR, ECF No. 8, PageID 136.)  He argued that assignment of error in terms of Ohio Criminal Rule 8(A), the Sixth and Fifth Amendments to the United States Constitution, Article I, §§ 5 and 10 of the Ohio Constitution, and ten cited cases, one from a federal district court in New York, three older Ohio cases, two cases from Arizona, and one case each from Maryland, New York, New Hampshire, and Rhode Island. *Id.*

In deciding the first assignment of error, the Twelfth District understood it had multiple federal and state law claims combined in this one assignment.  Its very first case citation is to *United States v. Murray*, 618 F.2d 892 (2nd Cir. 1980), on the definition of a duplicitous indictment. *Blankenburg I* at ¶ 8.  For the sufficiency requirements for an indictment, it cites *Hamling v. United States*, 418 U.S. 87, 117-118 (1974).  Finally, at ¶ 33, it expressly ruled on the fair notice and double jeopardy claims.

Therefore, Petitioner has not overcome the presumption that that Twelfth District decided his federal constitutional claims on the merits.  That court's opinion is therefore entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA").

This Court looks, then, to Petitioner's Traverse for an argument about how the Twelfth District's decision is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent.  Blankenburg emphasizes he is not raising a claim under *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005)(Traverse, ECF No. 16, PageID 3230).  He is certainly correct that the problem with the indictment in *Valentine* – multiple "carbon copy" counts with a wide time frame but charging separate offenses – is not present here.

Blankenburg argues that

> [T]he clearly established federal law provides i) that a defendant is entitled to due-process notice of a specific charge to afford him

> with a meaningful chance to defend, and ii) without sufficient
> notice of the specific charge, a defendant is deprived of his right to
> invoke double jeopardy in a future proceeding to bar multiple
> prosecutions or punishments for the same offense.

(Traverse, ECF No. 16, PageID 3232.) He recognizes that these are general standards and as such, to prevail, he must show that their application by the Twelfth District was so unreasonable as to be "beyond any possibility for fairminded disagreement." *Id.,* citing *Thomas v. Heidle*, 615 Fed. Appx. 271, 279 (6th Cir. 2015). To the same effect, see *White v. Wheeler*, 577 U.S. ___, 136 S. Ct. 456, 193 L. Ed. 2d 384 (2015)(per curiam), quoting *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 188 L. Ed. 2d 698 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Having set out this standard, Blankenburg fails to meet it.

He first urges that the indictment and bill of particulars "combined specific-act and course-of-conduct language within single counts." (Traverse, ECF No. 16, PageID 3232, citing the Indictment, ECF No. 8, PageID 23, 24, 28, 40, 44, and 45.) But at the first-cited page, Count 15 alleges Blankenburg engaged in a course of conduct for the three-year period May 1, 1990, through April 30, 1993, which constituted gross sexual imposition. It does not allege a specific act, but only a course of conduct including ongoing acts of sexual contact. At the other end of the indictment counts complained of, Count 41 on PageID 45 alleges "an ongoing course of criminal conduct" involving "repeated instances" of sexual contact. It also does not charge a criminal offense involving a specific act.

In upholding this pleading against his first assignment of error, Blankenburg argues the Twelfth District "applied the sufficient-notice law in an unreasonable manner" because "[it] is impossible to defend against 'unspecified' incidents." (Traverse, ECF No. 16, PageID 3233.) In essence Blankenburg is arguing that prosecution on a course of conduct count of an indictment is

per se unconstitutional. But where is that proposition in clearly established Supreme Court precedent? Blankenburg relies on *Jackson v. Virginia*, 443 U.S. 307 (1979); *Cole v. Arkansas*, 333 U.S. 196 (1948); *In re Oliver*, 333 U.S. 257 (1948); *Price v. Georgia*, 398 U.S. 323 (1970); *Abney v. United States*, 431 U.S. 651 (1977); *United States v. Dixon*, 509 U.S. 688 (1993); and *Hamling v. United States*, 418 U.S. 87 (1974)(Traverse, ECF No. 16, PageID 3234-35).

The holding in *Jackson*, as is well known, is that lack of evidence at trial which could have persuaded a reasonable factfinder beyond a reasonable doubt states a due process claim cognizable in habeas corpus. As a matter of dictum, Justice Stewart noted "a broader premise that has never been doubted in our constitutional system: that a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." But *Jackson* does not involve any holding by the Supreme Court on what notice is required.

Both Blankenburg and Justice Stewart in *Jackson* cite to *Cole v. Arkansas*, *supra*. There the defendants had been tried and convicted under § 2 of Act 193 of the 1943 Arkansas Legislature, but the Arkansas Supreme Court treated the case as having arisen under § 1 of that Act, despite the fact that information and the trial judge cited § 2. Justice Black wrote

> No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.

333 U.S. at 201. That general principle is of course well established, but the decision says nothing about whether a State can charge a course of conduct crime.

Both Blankenburg and Justice Black cite to *In re Oliver*, *supra*, decided the same day as *Cole*. *Oliver* is a famous contempt of court case. Oliver was sentenced for contempt for having lied to a Michigan judge sitting as if a one-man grand jury on the basis of non-conformity of

18

Oliver's testimony with that of at least one other witness. The judge believed the other witness and, without disclosing his testimony to Oliver, sentenced Oliver to sixty days in jail for contempt. With appropriate references to abolition of the Court of Star Chamber, the Supreme Court held that Oliver could not be tried in secret. That is clearly established. But nothing in *Oliver* speaks to the required contents of indictments.

In *Price v. Georgia*, 398 U.S. 323 (1970), a man was tried and acquitted of murder, but convicted of the lesser included offense of voluntary manslaughter. When the manslaughter conviction was reversed because of an erroneous jury instruction, the State attempted a retrial on the murder charge, which the Supreme Court held was barred by res judicata. The original indictment charged an act of murder; there was no issue about course of conduct language.

In *Abney v. United States*, 431 U.S. 651 (1977), the court held that denial of a motion to dismiss an indictment on Double Jeopardy grounds before a second trial was an appealable final order under 28 U.S.C. § 1291 because the Double Jeopardy Clause protects against a second trial, not just a second conviction. The indictment charged two offenses – conspiracy and attempt – in one count and the defendants were convicted. The convictions were reversed on evidentiary grounds and the defendants pled double jeopardy in bar of a second trial. The Supreme Court held there was no Double Jeopardy bar to the retrial despite the wording of the indictment.

In *United States v. Dixon*, 509 U.S. 688 (1993), the Court held that where a subsequent criminal prosecution requires proof of the same elements as had been used to prove a prior criminal contempt matter, the Double Jeopardy Clause proscribes the second prosecution, applying the test derived from *Blockburger v. United States*, 284 U.S. 299 (1932).

Finally, in *Hamling v. United States*, 418 U.S. 87 (1974), an obscenity case, the Court

upheld an indictment in the words of the statute, which had previously been held not to be unconstitutionally vague. On the fair notice question, the Court held that the language of the statute "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." 418 U.S. at 117-18, quoting *United States v. Hess*, 124 U.S. 483, 487 (1888). *Hess* was not a constitutional case, discussing what a State indictment must contain to satisfy the federal Constitution, but apparently based on federal criminal common law.

In sum Blankenburg has not shown that charging course of conduct crimes limited to particular time periods, victims, and locations is unconstitutional under any of the precedent he cites.

If this Court were to consider Blankenburg's arguments apart from Supreme Court precedent, it would not find them persuasive. Blankenburg was given notice of what he had to defend against, to wit, that over different periods of time he had engaged in courses of conduct with two different victims which involved specific sexual acts. The victims were named separately and the locations of the alleged offenses were specified. The Twelfth District noted that charging these offenses as course of conduct offenses was favorable to the defendant, as compared with charging the acts separately and subjecting him to punishment for each act of sexual abuse.

The holding of the Twelfth District that sexual abuse of a minor offenses can be charged as a course of conduct is a holding on a question of Ohio law binding on this Court. Applying AEDPA deference to the constitutional portions of *Blankenburg I*, this Court concludes Blankenburg has not shown they were an objectively unreasonable application of Supreme Court precedent on either the fair notice or the Double Jeopardy basis.

**Ground Two: Juror Bias**

In his Second Ground for Relief, pleaded in ¶ 16 of the Petition, Blankenburg claims his right to a fair and impartial trial by jury was violated in three ways: by actual juror bias, by implied juror bias, and by deliberate juror concealment during voir dire.

**Cognizability**

The Warden argues this Ground for Relief is not cognizable in habeas corpus. She asserts that defects in state post-conviction procedure cannot be reviewed in habeas, citing *Kirby v. Dutton*, 794 F.2d 245 (1986). She asserts the trial judge's crediting of the juror as against post-conviction witnesses is an exercise of discretion, not reviewable in habeas. And she claims Ohio R. Crim. P. 24(C)(9), allowing a person to serve as a juror if the trial judge is satisfied with his or her impartiality, was applied here and its application may not be second-guessed by this Court (Return, ECF No. 9, PageID 3186-87).

Blankenburg does not respond to these three assertions in his Traverse, but the Court finds them unpersuasive. Petitioner's claim here is that he was convicted by a jury which included a member who was actually biased against him. That claim arises directly under the Sixth Amendment which is applicable to the States by incorporation into the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145 (1968). Petitioner does not seek to have this Court order some change in the Ohio post-conviction process, either for this case or in general. He does not ask us to reverse any of the Ohio trial judge's decisions on the grounds they were an

abuse of discretion.

As to Ohio R. Crim. P. 24(C)(9), the Warden argues that making a trial judge's finding as to impartiality conclusive is a legislative[2] choice of Ohio and its application cannot be reviewed in habeas corpus. To the extent this argument claims that a merely formal declaration of impartiality by a trial judge is preclusive of any further inquiry into jury impartiality, it is plainly wrong. The Sixth Amendment guarantee of jury trial cannot be so summarily displaced. Moreover, the Warden cites no Ohio case law reading Rule 24(C)(9) as having that effect.

**Procedural Default**

The Warden asserts in the alternative that Ground Two is procedurally defaulted in that it was not fairly presented to the Ohio courts as a constitutional claim (Return, ECF No. 9, PageID 3193). Blankenburg's counsel claims to be flabbergasted by this assertion. He writes:

> This argument is hard to even fathom. The bias claim was identified as a specific ground in the state postconviction petition. [Doc. 8-1, PAGEID432.] It was then litigated twice in the trial court, twice in the Ohio Court of Appeals, and finally in the Ohio Supreme Court.

(Traverse, ECF No. 16, PageID 3237, n. 10.)

Blankenburg's Ground B for relief in post-conviction reads:

> B.     Blankenburg's 6th Amendment right to a jury trial was violated where a juror expressed her bias against Blankenburg to a third-party, failed to reveal that bias in voir dire, and proceeded to deliberate in the case and convict Blankenburg of all the sex-offenses.

---

[2] In Ohio, rules of practice are adopted by the Ohio Supreme Court, sitting in a rule-making or legislative capacity, and then are subject to legislative veto under the Modern Courts Amendment. It is appropriate to call their adoption a "legislative" choice, understood in this way.

(SCR, ECF No. 8-1, PageID 432.)

The trial judge dismissed the post-conviction petition on the State's motion for summary judgment, concluding it was barred by Ohio's criminal res judicata doctrine and the facts in the co-worker affidavits, even if construed as true, would not entitle Blankenburg to relief (Order Denying Petition for Post-Conviction Relief, SCR, ECF No. 8-1, PageID 440, et seq.). On appeal, in addition to raising procedural assignments of error about the way the trial court disposed of the Petition, Blankenburg plainly stated

> A DEFENDANT IS ENTITLED TO POST-CONVICTION RELIEF WHEN HIS CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY WAS VIOLATED BY A JUROR WHO MISLED THE ATTORNEYS AND THE COURT REGARDING HER INTEREST IN THE OUTCOME OF THE CASE DURING VOIR DIRE EXAMINATION.

(Brief of Appellant, SCR, ECF No. 8-1, PageID 456.) Considering the co-worker affidavits, the Twelfth District reversed and remanded. *Blankenburg II*, *supra*. On remand the trial court again granted summary judgment (Order, SCR, ECF No. 8-1, PageID 557). On appeal Blankenburg raised two procedural assignments of error, but pleaded as an issue under the second assignment that the juror in question had concealed information during voir dire (Brief, SCR, ECF No. 8-1, PageID 589). This time the Twelfth District affirmed and Blankenburg appealed to the Ohio Supreme Court. Two of his three proposed propositions of law relate to his claim of entitlement to a hearing on a "colorable claim of juror impartiality [sic]" and a colorable claim of misleading on voir dire (Memorandum in Support of Jurisdiction, SCR, ECF No. 8-1, PageID 668).

Based on the cited portions of the State Court Record, this Court concludes Blankenburg fairly presented his federal constitutional claims to the Ohio courts.

**The Merits**

**The State Courts' Decisions on the Merits**

Blankenburg's jury partiality claim focuses on seated juror T.M.  In post-conviction, Blankenburg submitted affidavits from two of T.M.'s former co-workers at a Kroger pharmacy. Affiant D.M. stated[3] that T.M. was a pharmacist at Kroger and told him before the trial that her son had been a patient of Blankenburg's and that she was "obsessed with becoming a juror in the case" and wanted to become the foreperson in order to deliver a guilty verdict.  D.M. also stated it was not uncommon for T.M. to fill prescriptions sent to the pharmacy by Blankenburg.

Affiant T.B. averred that he was also a pharmacist at Kroger who had worked with T.M. where he and T.M. would regularly fill prescriptions written by Blankenburg.  He had heard her say that her child was a patient of Blankenburg and that she was determined to get on the jury in the criminal case to make Blankenburg "fry" for his actions.

The trial judge first considered these Affidavits in his decision granting summary judgment the first time.  He found that the affidavits "are comprised of inadmissible hearsay," citing Ohio R. Evid. 606(B)(Order, SCR, ECF No. 8-1, PageID 443).  He also found that "even if the Court construed all of the facts contained in the affidavits as true, it would still not entitle Petitioner to relief." *Id.*  The judge went on to find Blankenburg's claims were barred by Ohio's criminal res judicata doctrine as enunciated in *State v. Perry*, 10 Ohio St. 2d 175  (1967), and its progeny. *Id.* at PageID 443-44.  The judge concluded that "Blankenburg has failed to meet his

---

[3] The Affidavits of D.M. and T.B. have been filed in this Court pursuant to the Court's *sua sponte* Order to Supplement the Record (ECF Nos. 21, 23).

burden to show that the evidence is more than marginally significant and that it advances his claim beyond a mere hypothesis that the result would be different if this evidence had been submitted at trial."

On appeal the Twelfth District held that application of res judicata was improper because the affidavits, if true, were "more than marginally relevant to supports appellant's claim that he did not received a fair trial" and there was "no evidence in the original trial record" showing this information was known at the time of the direct appeal.[4] *Blankenburg II*, ¶ 14. The court found "a hearing on appellant's petition should be held." *Id.* The Twelfth District also concluded the trial judge had not made a credibility determination regarding the affidavits as permitted in Ohio post-conviction practice under *State v. Calhoun*, 86 Ohio St. 3d 279 (1999). *Id.* at ¶ 18.

On remand, Judge Spaeth again granted the State's motion for summary judgment. Reviewing the case, he wrote:

> This Court has carefully reviewed the case file and transcripts in regards to Blankenburg's allegation of T.M.'s possible juror bias. A review of the record reveals that juror, T.M., indicated a willingness to disregard what she had heard about this case in the media, and the intent to rely instead on evidence and law presented in court during the trial. ·No person summoned as a juror shall be disqualified oy reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict." Crim.R. 24(C)(9). See R.C. 2945.25. see also, *State v. Cruz*, 12th Dist. CA2012-03-059, 2013-Ohio-215, 1129.
>
> * * *
>
> This Court had the opportunity to observe the demeanor of T.M. and evaluate firsthand the sincerity of her responses to questions about fairness and impartiality.
>
> Moreover, Blankenburg has failed to demonstrate or cite anything in the record to indicate any actual bias on the part of juror, T.M.

---

[4] The Affidavits are dated March 22, 2011 (T.B.), and April 6, 2011 (D.M.).

Blankenburg has not cited to any evidence of juror tampering or any evidence as to how juror T.M. could have manipulated the juror pool to make sure "she got on that jury". While Blankenburg points to juror T.M. comments prior to the case even going to trial, a review of record contradicts Blankenburg's bias argument. Juror T.M., at one point during voir dire even requested to be excused from the jury. Juror T.M., was questioned at length by this court and found to be a competent juror. This Court found juror T.M. answers to be honest and forthright.

This Court has carefully reviewed the evidence, the issues raised by the affidavits. and Blankenburg's arguments with regard to this evidence. Blankenburg has failed to meet his burden to show that the evidence is more than marginally significant and that it advances his claim beyond a mere hypothesis that the result would be different if this evidence had been submitted at trial.

Further, this Court after having reviewed the pleadings, affidavits, files, and other records to determine whether genuine issues of material fact exist and whether a substantial constitutional issue has been established finds no evidence of actual bias on the part of juror T.M. Construing the evidence most strongly in Blankenburg's favor, reasonable minds can only come to one conclusion, which is adverse to Blankenburg.

(Order, SCR, ECF No. 8-1, PageID 564-66.)

Blankenburg again appealed. The Twelfth District held that its prior decision remanding

the case had not mandated an evidentiary hearing. However,

In this case, the trial court did not view the affidavits in the light most favorable to the appellant, nor did it construe the conflicts in the evidence arising from the affidavits in appellant's favor as it was required to do, in order to grant summary judgment to the state under R.C. 2953.21 (D). *Id.* As a result, we will treat the trial court's decision granting summary judgment to the state on appellant's PCR petition as being one that "summarily dismissed" appellant's petition without holding an evidentiary hearing under R.C. 2953.21(C) and *Calhoun.*

*Blankenburg III*, *supra*, at ¶ 25. In other words, the appellate court found granting summary

judgment was improper, but affirmed on a different basis.

The Twelfth District found Judge Spaeth had applied *Calhoun* in finding the Affidavits not to be credible and that it "should not substitute its own judgment regarding credibility for that of the trial court." *Id.* at ¶ 29. It noted the trial judge's reference to Ohio Crim. R. 24(C)(9) and concluded

> [I]t is readily apparent that the trial court was satisfied that T.M. would serve as an impartial and unbiased juror irrespective of any alleged biases whether or not disclosed to the trial court. Simply stated, based on the trial court's credibility determination, what T.M. may have told her former coworkers prior to her selection as a juror in no way impacts her oath to remain impartial. As a reviewing court, we must accept the trial court's findings as true.

*Id.*

In dissent, Presiding Judge Ringland argued

> Nevertheless, by refusing to hold an evidentiary hearing, the trial court did not have the opportunity to observe T.M.'s co-workers' demeanor and evaluate, firsthand, the sincerity of their testimony regarding what T.M. had told them. Nor did the trial court have the opportunity to observe T.M.'s demeanor or evaluate, firsthand, the sincerity of her response when confronted with her co-workers' testimony that she had told one of them that she was determined to be on appellant's jury and even wanted to be the foreman of that jury so that she could deliver a guilty verdict to appellant. Additionally, there is no evidence in the record that T.M.'s co-workers had any motive to lie about what T.M. told them regarding her desire to be the foreman on appellant's jury so she could deliver a guilty verdict to him. The trial court could not simply accept T.M.'s responses during voir dire as true without considering the validity of her co-workers' affidavit testimony. An evidentiary hearing is needed to determine whether either T.M. or her co-workers were telling the truth or lying about this matter. The statements that T.M. allegedly made to her co-workers, if true, coupled with T.M.'s responses during voir dire, if false, amount to an outright fraud on the court. When a trial court learns of such allegations, it is obligated to investigate them and to act accordingly if it finds them to be true.

*Id.* at ¶ 40.

**The Magistrate Judge's Analysis of the Merits**

The Magistrate Judge is persuaded by Judge Ringland's dissent.

A criminal defendant in any court in the United States who is charged with an offense carrying a possible penalty in excess of six months imprisonment is entitled to trial by an impartial jury.[5] *Duncan v. Louisiana*, 391 U.S. 145 (1968). In this case the Ohio courts have determined that Petitioner was not deprived of that right and the question is whether that decision is entitled to deference under 28 U.S.C. § 2254(d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In this case, the Magistrate Judge concludes the Ohio courts' decision was based on an unreasonable determination of the facts in light of the evidence presented.

The Court starts its analysis with voir dire. Judge Spaeth began with standard instructions reminding the venire that a trial jury must be as "free as humanly possible from bias,

---

[5] At the beginning of trial, Dr. Blankenburg waived his right to trial by jury and consented to a bench trial on Counts Four through Fourteen, Twenty-Three through Thirty-Six, and Count Fifty-Four (Tr. Tr. ECF No. 19-2, PageID 3387-88). The validity of that waiver is not in question in these proceedings.

prejudice or sympathy and not be influenced by any preconceived ideas either as to the law or the facts. . . . " There may be something in your background or in the course of your life experiences that may disqualify you from hearing this particular case." (Trial Transcript ("Tr.Tr."), ECF No. 19-2, PageID 3402.) He indicated a juror could be excused for cause if they knew one of the parties. *Id.* The jurors were sworn to answer voir dire questions truthfully and to reaffirm the truth of the answers they had given on jury questionnaires.[6] *Id.* at PageID 3404.

The venire members are identified in the transcript by an assigned number. Many of them knew Dr. Blankenburg professionally as a treating physician for themselves, their children, or their grandchildren. *Id.* at PageID 3458.

In his assessment of Juror T.M. from voir dire, Judge Spaeth noted she had asked to be excused, that she was questioned at length, and that he found her to be competent, honest, and forthright. However, he did not include any record references for those findings. The voir dire transcript has been filed (ECF No. 19-2) and the juror in question has been identified by her juror number, to wit, 314. During voir dire, Juror 314, answered that she knew witness Michael Jackson, a pharmacist at Kroger's, and could weigh his testimony impartially even though he was her supervisor (Tr. Tr., PageID 3436). She denied having heard or read or discussed at work any of the issues surrounding this case. *Id.* at PageID 3437. She responded generally that she could be a fair and impartial juror. *Id.*

Juror 314 also knew witness Dan Heim with whom she had worked at Walgreen's about ten years before the trial. *Id.* at PageID 3440. She averred that she could be fair and impartial in making a determination of his credibility. *Id.* She testified that she had spoken with witness Bob Mortimer on the phone a couple of times as part of his investigatory work in pharmacy cases, but

---

[6] Those questionnaires are not before this Court nor does Petitioner make any argument with respect to their contents.

not about this case. *Id.* at PageID 3451-52. She reiterated that his being a witness would not prevent her from being fair and impartial. *Id.* She agreed with the general test of weighing discrepancies among witnesses. *Id.* at PageID 3610.

Somewhat later Juror 314 asked to approach the bench. *Id.* at PageID 3624. She shared privately that a maternal aunt was a life-long drug addict, but they did not have much contact, she did not blame the criminal justice system, and it would not affect her ability to be fair and impartial. *Id.* at PageID 3625. She also mentioned that she and her husband would be accepting an adopted child into their home during the time set for trial. *Id.* at PageID 3626. She thought she would be able to focus regardless of that situation. *Id.* at PageID 3628. She said that, if instructed, she could put out of her mind any evidence related to the drug trafficking charges in the indictment *Id.* at PageID 3676.

Judge Spaeth asked if any venireperson knew the defendant *Id.* at PageID 3458. Although Juror 314 admitted knowing several of the witnesses, she did not admit to knowing Dr. Blankenburg although according to the Affidavits submitted in post-conviction, one or more of Juror 314's male children had been his patients, which was the sort of information other venirepersons revealed in response to that question and in her presence.

Petitioner complains that Juror 314 remained mute when asked about filling prescriptions Blankenburg had written, but gives only a lengthy and non-specific record reference to questions about knowing witnesses (ECF No. 23-1, citing Voir Dire Tr. pp 34-72 and 93-99). In the absence of something more specific about this relationship – e.g., that many of Blankenburg's prescriptions were filled at this particular pharmacy – the Court does not regard any concealment about "professional relationship" as proven.

Juror 314 certainly did not disclose during voir dire that she had ever expressed the

strong opinions about Blankenburg's guilt attributed to her by the Affiants. Had she disclosed that she had once held those opinions (if she had), Judge Spaeth would undoubtedly have examined her closely about how she had formed them and whether she could put them aside. If she held those opinions at the time of trial, she would clearly have been disqualified for cause.

The trial judge had the opportunity to confront Juror 314 with the accusations made against her by her former co-workers, but did not do so. Instead, he made a "paper" credibility finding. His findings about Juror 314 were based on observations during voir dire on October 9, 2009, just over four years before he credited her credibility in dismissing the post-conviction petition (SCR, ECF No. 8-1, PageID 558).

Judge Spaeth made his credibility findings on the basis of *Calhoun*, *supra*, and the Twelfth District majority affirmed on that basis. In *Calhoun*, the Ohio Supreme Court reiterated that post-conviction proceedings are not constitutionally required and that the defendant's rights are limited by the statute creating the remedy, Ohio Revised Code § 2953.21. 86 Ohio St. 3d at 281. Thus "a criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing." *Id. at 282*, *citing State v. Cole*, 2 Ohio St. 3d 112 (1982). Rather, "before a hearing is granted, 'the petitioner bears the initial burden to submit evidentiary documents containing *sufficient operative facts* to demonstrate the lack of competent counsel *and* that the *defense was prejudiced* by counsel's ineffectiveness." (Emphasis added.)" *Id.* at 283, *citing State v. Jackson*, 64 Ohio St. 2d 107 (1980), at syllabus.[7]

In the *Calhoun* case, the court of appeals had applied the usual Ohio (and indeed federal) rule for considering summary judgment motions which requires the trial court to accept affidavits submitted on such a motion as true. In the post-conviction context, the Ohio Supreme

---

[7] *Jackson* was decided at a time when Ohio followed the "Syllabus Rule." Ohio adopted the syllabus rule in 1858 and abolished it in 2002.

Court disagreed. It held that, because affidavits are sworn, they should be given "due deference." However, trial judges were not required to accept their truth as would be the case on a summary judgment motion, because the contrary holding "would require a hearing for every postconviction relief petition," a holding that would be at odds with the postconviction statute. *Id.* at 284. The court offered guidelines in evaluating postconviction affidavits:

> [A] trial court, in assessing the credibility of affidavit testimony in so-called paper hearings, should consider all relevant factors. [citation omitted] Among those factors are (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.

Judge Spaeth accurately recited the content of the two affidavits Petitioner submitted (Order Denying Petition for Post-Conviction Relief, SCR, ECF No. 8-1, PageID 561). Then he spends a page discussing the State's reliance on the *aliunde* rule as a basis for rejecting the affidavits without expressly deciding that issue. *Id.* at PageID 562-63. He notes that Juror 314 had agreed to put aside whatever she may have read or heard in the media about the case. He notes his ability at the time of trial to observe Juror 314's demeanor. *Id.* at PageID 565. Having discussed *Calhoun*, he fails to expressly apply any of the factors in *Calhoun* to his evaluation of the affidavits, but rejects them summarily. *Id.*

The factors enumerated in *Calhoun* are certainly common sense factors to apply to judging the credibility of an affiant. Judge Spaeth was indeed the judge who tried the case,

satisfying factor 1. While the two affidavits report parallel expressions by Juror 314, they do not on their fact appear to have been drafted by the same person: they are differently formatted and notarized by different notaries public.[8] As to the hearsay question, T.B.'s affidavit relies heavily on what D.M. told T.B. and is therefore based on hearsay.[9] D.M.'s affidavit, however, is based directly on his alleged conversation(s) with Juror 314. As to factor 4, there is no indication either of the affiants was related to Blankenburg or was otherwise interested in the outcome. As to factor 5, there was no evidence at trial about these alleged prior statements of Juror 314.

Having read the same affidavits, on the first post-conviction appeal, the Twelfth District found them sufficiently persuasive to remand for an evidentiary hearing. On the second appeal they did not enforce that ruling, but concluded Judge Spaeth had not properly granted summary judgment. *Blankenburg II*, *supra*. Instead, they relied in affirming on a trial judge's discretion not to conduct an evidentiary hearing.

In dissent, Judge Ringland emphasized that the trial judge, by denying an evidentiary hearing, did not have the opportunity to evaluate the demeanor and credibility of either the affiants or of Juror 314 when confronted with the affidavits. This Court concludes that such an opportunity is necessary to ensure the fairness of the jury trial Blankenburg received.

In doing so, the Court does not purport to conclude that Judge Spaeth abused his discretion in not holding an evidentiary hearing. The Twelfth District decided that he had not and its decision is not reviewable in habeas. *Sinistaj v. Burt*, 66 F.3d 804 (6th Cir. 1995). Rather, the question over which we do have jurisdiction is whether his decision, as affirmed by the Twelfth District, embodies an unreasonable determination of the facts based on the evidence that

---

[8] Applying this Calhoun factor is sometimes easy in the case of affidavits submitted by pro se litigants, where the formatting is often identical and sometimes the same misspellings are found in different affidavits.

[9] All affidavits are, when filed in court, by definition hearsay – out-of-court statements offered in court to prove the truth of their contents. This Court presumes what the Calhoun court was referring to here is whether the affiant is testifying by affidavit to facts he or she observed, as opposed to facts learned from another person.

was before him.

First of all, there is no reason prima facie to doubt the veracity of the affiants. The affiants are not related to Blankenburg in any way that has been shown, except for filling prescriptions he had written. There is nothing in the record to suggest they are sympathetic with the conduct he was convicted of committing. Their recount of the circumstances in which Juror 314 spoke are consistent with truth: co-workers sharing reactions to a local case.

Second, the trial judge's crediting of Juror 314 was on the basis of a four-year-old impression, formed in the midst of voir dire in which many veniremen were questioned. She actually had a basis on which the judge would have excused her, to wit, knowing the defendant at least through having children who were patients. Most importantly, she was credited without being confronted with the strong evidence against her.

The Court is not saying that, ultimately, Juror 314 must be found to have been biased. After an evidentiary hearing at which all three of these witnesses testify, it may be that the Ohio courts' decision is sustainable. All that is required at this stage is to decide that the evidence before Judge Spaeth does not sustain the conclusion he reached.

This is not a situation where the state court error could be found to be harmless or not material. Errors of a structural nature cannot be harmless. *Arizona v. Fulminante*, 499 U.S. 279 (1991). Examples include judicial bias (*Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008)*, citing Washington v. Recuenco*, 548 U.S. 212 (2006), and *Sullivan v. Louisiana*, 508 U.S. 275, 283 (1993)), *Tumey v. Ohio*, 273 U.S. 510 (1927)). A trial jury which includes a juror who is determined to convict and who fails to disclose her prior bias cannot return a verdict which can stand. The Supreme Court has recently reminded us that even exposure of a jury to testimony tending to produce a conviction or sentence based on a defendant's race requires correction even

through the extraordinary measure of granting a motion for relief from judgment under Fed. R. Civ. P. 60(b)(6). *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 197 L. Ed. 2d 1 (2017).

Having concluded that the Ohio courts' decision is not a reasonable determination of the facts on the basis of the evidence of record, this Court is authorized to conduct an evidentiary hearing to determine the facts as they relate to this claim. *Cullen v. Pinholster*, 563 U.S. 170 (2011), precludes such a hearing only if the state court decision satisfies 28 U.S.C. Sec. 2254(d)(2) which is not the case here.


**Conclusion**


It is therefore respectfully recommended that Blankenburg's First Ground for Relief be DISMISSED WITH PREJUDICE and the Second Ground for Relief be GRANTED to the extent of concluding that the state courts' decision is not a reasonable determination of the facts on the basis of the evidence presented. A final recommendation on Ground Two and on any certificate of appealability must await the outcome of an evidentiary hearing. Counsel for Petitioner shall promptly file a motion for such a hearing, stating which witnesses he would call and what their expected testimony would be.


June 19, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).